UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY FREEMAN and ANDREW TROUT, | ) | |
| on behalf of themselves and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-02550-SEP |
| | ) | |
| TOYOTA MOTOR SALES, USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Toyota Motor Sales, USA, Inc's ("Toyota") Motion to Dismiss.  Doc. [17].  The motion is fully briefed.  For the reasons set forth below, the motion will be granted in part and denied in part.

### Motion to Dismiss Standard

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint.  When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in the non-movant's favor. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Bell Atl. Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Specifically, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly*, 550 U.S. at 556.

1

Claims alleging fraud must comply with the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to set forth "the circumstances constituting fraud . . . with particularity."  The "circumstances" of fraud include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby."  *Com. Prop. Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).  In other words, the claim must identify the "who, what, where, when, and how" of the alleged fraud.  *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

**Relevant Facts and Background[1]**

Plaintiffs Terry Freeman and Andrew Trout ("Plaintiffs") bring this putative class action on behalf of persons who purchased or leased a Toyota vehicle with a defective hands-free phone system.  When a driver uses the hands-free phone system to make or receive a call, the person on the other end of the call hears an echo of his or her own words (the "echo defect").  The echo defect makes phone conversation "impossible to maintain," rendering the hands-free system "virtually unusable."  Doc. [15] ¶ 1.

Toyota has manufactured and sold vehicles containing a Bluetooth hands-free phone system for over ten years, and it advertises that feature to all visitors of its website.  The website informed customers about the ability to "Drive Safely with Hands Free In-Car Navigation & Calling" while they perused the "Local Specials," and other benefits of the Bluetooth features were provided in a downloadable file providing details of customized builds.  Toyota has known about the echo defect since no later than 2007 because it is mentioned in various owner's manuals provided to consumers after purchasing or leasing a vehicle.  But the manuals do not make clear the severity of the problem.  Further, despite maintaining a webpage entitled "Bluetooth Support," Toyota has made no disclosures relating to the echo defect on that page or any other site maintained by Toyota.  It has therefore prevented consumers from learning about the existence and nature of the echo defect prior to their purchases or leases.  In addition to failing to notify Plaintiffs of the echo defect prior to purchase or lease, Toyota has breached its written warranties and failed to repair the vehicles.

---

[1] The facts contained herein are taken from the allegations set out in Plaintiffs' complaint. They are accepted as true for the purpose of this Memorandum and Order.  *See Iqbal*, 556 U.S. at 678-79; *Neitzke*, 490 U.S. at 326–27.

Plaintiff Terry Freeman purchased a used 2018 Toyota Highlander in February 2019, and Plaintiff Andrew Trout purchased a new 2016 Toyota Highlander in January 2016.  Both men were aware that the cars had built-in Bluetooth phone systems and expected the systems to function properly.  Both learned from people with whom they spoke using the Bluetooth system that their conversation partners heard their own words echo back to them.  Both cars were covered by a warranty that stated, in part, "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota [subject to exceptions not relevant here]."  Both men contacted Toyota in April 2019 regarding the problem. Toyota advised Plaintiff Freeman to bring his vehicle to a dealer for service, but since he had already visited once and Toyota had not solved the problem, he did not take it back.  Toyota advised Plaintiff Trout to alter the volume on his cell phone and on the head unit in his vehicle, but that fix was unsuccessful.

Plaintiffs allege that Toyota's actions violate the Missouri Merchandising Practices Act (the "MMPA"), Mo. Rev. Stat. § 407.010, *et seq*., by means of unfair practices, deception, and omissions.  They further allege that these actions constitute a breach of a written warranty and unjust enrichment.

Plaintiffs seek to represent a class of similarly situated owners and lessees of Toyota vehicles in Missouri who will be harmed by the echo defect (the "Class").  They also seek to represent Missourians who purchased or leased their vehicles for personal, family, or household purposes (the "MMPA Subclass") and Missourians with written warranties that Toyota allegedly breached by failing to repair the echo defect within a reasonable time (the "Warranty Subclass").

Plaintiffs' first amended complaint has six counts:

**Count I**:    Breach of Written Warranty;

**Count II**:   Violation of the MMPA By Means of Unfair Practices – Failure to Disclose the Echo Defect;

**Count III**:  Violation of the MMPA By Means of Unfair Practices – Breach of Written Warranty;

**Count IV**:   Violation of the MMPA By Means of Deception;

**Count V**:    Violation of the MMPA By Means of Omission of a Material Fact; and

**Count VI**:   Unjust Enrichment.

## Discussion

Toyota seeks dismissal of all counts.  The Court will adopt the structure of the parties' briefing and address counts by category.

### 1.   Counts I and III – Breach of Written Warranty[2]

Plaintiffs allege that they and the Warranty Subclass have written warranties covering the Bluetooth system in their vehicles.  Toyota allegedly breached its written warranties because it failed to repair the defective Bluetooth systems within a reasonable time after Plaintiffs reported the echo defect to Toyota.  Plaintiffs present this claim as both a standalone breach of warranty claim in Count I and an MMPA violation in Count III.  *See* Doc. [15] ¶¶ 124-31, 148-59.

Toyota moves to dismiss Counts I and III because the warranty is limited to "repairs and adjustments needed to correct defects in materials or workmanship."  *Id.* ¶¶ 63, 82.  Toyota asserts that Plaintiffs' defect theory is one of design, not materials or workmanship, and therefore the warranty does not cover the echo defect.  Doc. [18] at 4-5.  Toyota also contends that Plaintiffs' attempt to insert the word "manufacturing" into the complaint is a conclusion unsupported by fact, since the complaint alleges that the defect is common to entire vehicle make and model years and does not identify any substandard material or flaws in the manufacturing process.  *Id.* at 5.

Plaintiff responds that it is entitled to discovery because, at the pleading stage, a defendant's characterization of the nature of a breach of warranty claim should not control, and it is proper to allow discovery to go forward instead of dismissing the complaint where the complaint does not foreclose an express warranty claim.  Doc. [23] at 2-3.

As stated above, Plaintiffs' warranty is limited to "repairs and adjustments needed to correct defects in materials or workmanship."  Doc. [15] ¶¶ 63, 82.  Warranties for defects in material and workmanship do not apply to design-defect allegations.  *See Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 752-53 (8th Cir. 2013).  Here, Plaintiffs allege that entire models had the same echo defect in the Bluetooth system.  Since Plaintiffs allege that all vehicles had the same defect, they are alleging a design defect.  *See id.* at 753 ("A defect in material is a defect in quality . . . . Design, on the contrary, involves the overall plan of construction and operation.") (quotations and citations omitted); *see also Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG

---

[2] The parties apply the same arguments to both counts.  Docs. [18] at 14; [23] at 4; [24] at 6 n.3.

(VBKx), 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) (stating that the distinction between a design defect and a defect in materials or workmanship is whether the problem is with a specific vehicle or whether it exists in all vehicles of a particular model).

Plaintiffs argue that they need discovery to identify the exact nature of their breach of warranty claims, citing *Flynn v. CTB, Inc.*, No. 1:12–CV–68 SNLJ, 2013 WL 28244, at *4 (E.D. Mo. Jan. 2, 2013), where the court denied a motion to dismiss where the complaint pleaded "breach of warranty without alleging exactly why."  Plaintiffs also cite *Alin v. Am. Honda Motor Co.*, Civ. Action No. 08-4825 (KSH), 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010), where the court denied a motion to dismiss a breach of warranty claim because, "[a]t the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."

Plaintiffs' citations are inapposite.  Unlike the plaintiffs in their cited cases, Plaintiffs here have not alleged sufficient facts to support a reasonable inference that the alleged defect is one of materials rather than the overall design of the Bluetooth system.  Plaintiffs' only mentions of manufacturing defects are conclusory.  *See* Doc. [15] ¶¶ 20, 54, 116(d).  The complaint addresses the Bluetooth's system overall operation, not any particular flaws related to materials or the assembly process.  Insertion of the word "manufacturing" at various places in the complaint is insufficient to survive a motion to dismiss.  *See Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) (concluding that the complaint had pleaded a design defect "[d]espite its scattered references to 'materials'").

Because Plaintiffs' breach of warranty claims are based on a design defect, and the warranty does not cover design defects, Counts I and III will be dismissed.[3]

## 2.  Counts II and V – Omission-Based MMPA Violation[4]

The Missouri Merchandising Practices Act makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair

---

[3] Because the Court finds that the warranty does not cover design defects such as the echo defect, it does not address the parties' arguments regarding Toyota's disclosure of the defect to Plaintiffs or whether Plaintiffs provided Toyota with a reasonable period to remedy the issue.

[4] Toyota applies the same arguments to Counts II, IV, and V.  *See* Doc. [18] at 8.  While Plaintiffs group some elements of all three claims together, Doc. [23] at 4, they separately argue that Count IV, which is

practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.  In MMPA actions, courts apply the more stringent pleading requirements of Federal Rule of Civil Procedure 9(b) pertaining to fraud. *Johnsen v. Honeywell Int'l Inc.*, No. 4:14CV00594 RLW, 2016 WL 1242545, at *2 (E.D. Mo. Mar. 29, 2016).  That rule dictates that "the circumstances constituting fraud" must be "state[d] with particularity." Fed. R. Civ. P. 9(b).

Where an MMPA claim concerns an omission of a material fact and not an affirmative misrepresentation, to meet Rule 9(b)'s heightened pleading standard, a plaintiff must "allege with specificity the time and place of the conduct complained of, the content omitted, the identity of the person who omitted it, and what was obtained or given up thereby." *Budach v. NIBCO, Inc.*, No. 2:14-cv-04324, 2015 WL 3853298, at *7 (W.D. Mo. June 22, 2015).

Additionally, a claim for omission of a material fact under the MMPA has a scienter requirement. *Id.* at *8.  "[A] plaintiff must show the defendant failed to disclose material facts that were '*known to him/her,* or upon reasonable inquiry *would [have been] known to him/her.*'" *Id.* (quoting *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009)) (emphasis in original); *see also Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. banc 2007) (omission under the MMPA "imposes a broader duty on sellers than the common law imposes for fraud liability, as a fraud claim requires the seller to have actual knowledge of the material facts").

Plaintiffs allege that Toyota has violated the MMPA by failing to disclose (in Count II) or omitting the material fact of (in Count V) the echo defect to Plaintiffs and the MMPA Subclass prior to their purchases or leases of Toyotas, despite knowing of the echo defect since no later than 2007.  Toyota seeks to dismiss both of these counts on the grounds that Plaintiffs have failed to allege certain specific facts required by Rule 9(b).  Specifically, Toyota argues that Plaintiffs do not plead facts showing (a) the content of the omission, and (b) Toyota's knowledge of the echo defect.

---

labeled an MMPA deception claim, does not have a scienter requirement. *Id.* at 11-13.  Toyota rejects Plaintiffs' distinction between their omission-based claims and their deception-based claim.  Doc. [24] at 11-12.  While Counts II, IV, and V share some analysis under either side's approach, the Court addresses the disagreement as to Count IV and its implications in Section 3 of this Memorandum.

*a. Plaintiffs adequately plead facts showing the content of the omission.*

Toyota argues that Plaintiffs have not alleged particular facts showing what information they think Toyota should have provided to them. Doc. [18] at 10.  Toyota points out that Plaintiffs allege that Toyota's owner's manuals specifically state that "an echo may be heard" and "voice echo may increase" depending on the volume of the call, citing Doc. [15] ¶¶ 34-35, so Plaintiffs' omission-based MMPA claims cannot rest on a failure to disclose that information. Doc. [18] at 10.  Further, Toyota asserts that to the extent that Plaintiffs claim that Toyota should have provided different information, Plaintiffs do not allege what should have been disclosed. *Id.*  Toyota argues that Plaintiffs must plead facts demonstrating what in particular Toyota should have disclosed—"is the system unusable in every driving and speaking condition? Does the head unit volume level ever contribute to the issue? Are all calls affected, or only some? Are all phone makes and models impacted, or only some?"—, as "Plaintiffs must do more than just merely allege that a component part fails to operate as expected."  *Id.* at 10-11.

Plaintiffs respond that they have alleged more than enough to satisfy Rule 9(b).  Doc. [23] at 5.  They point to the first paragraph of the complaint, where they describe the echo defect—"a defective hands-free phone system, such that when the driver of the Toyota uses the hands-free phone system to make or receive a call the person on the other end of the call hears an echo of his or her own words . . . This echo defect makes continuation of the phone conversation impossible to maintain," Doc. [15] ¶ 1—as well as the paragraphs of the complaint where they describe what they believe Toyota should have disclosed:

> 21. Despite having a webpage specifically entitled "*Bluetooth* Support," Toyota failed to make any disclosure relating to the echo defect on this webpage. To avoid omitting material facts concerning the existence and nature of the echo defect, Toyota could and should have used this or a similar webpage to inform consumers of the echo defect.

> 22. Specifically, Toyota should have disclosed on this or a similar webpage that when the driver of a Class Vehicle uses the Bluetooth hands-free phone system to make or receive a phone call, the person on the other end of the phone call will hear an echo of his or her own words. Toyota also should have disclosed the severity of the echo on such a webpage, so that consumers would understand that the echo defect prevents them from being able to carry on a conversation.

> 23. Yet, even though it had exclusive knowledge of the echo defect, Toyota failed to make any such disclosures on its "*Bluetooth* Support" webpage. Nor did it make any such disclosures on its webpage with the headline "Drive Safely with Hands

Free In-Car Navigation & Calling," or on any other easily accessible webpage specifically relating to its Bluetooth hands-free system.

*Id.* ¶¶ 21-23.  Plaintiffs argue that these allegations go beyond "'a generic assertion that the system is defective and doesn't work.'"  Doc. [23] at 6 (quoting Doc. [18] at 10).  Plaintiffs suggest that Toyota's list of questions "far surpasses what is required," as "[t]he Eighth Circuit has held that 'Rule 9(b) does not require a complaint to include highly specific allegations with respect to facts that would be known to the defendants but not to the plaintiffs before the plaintiffs have had some opportunity to conduct discovery.'" Doc. [23] at 7. *See Drobnak v. Anderson Corp.*, 561 F.3d 778, 783–84 (8th Cir. 2009)).

Toyota's argument that Plaintiffs' allegations are insufficiently specific is without merit. Plaintiffs have described the specific information that they allege Toyota should have provided: that use of the Bluetooth system would cause the person on the other end of the line to hear an echo of his or her own words, such that it would be impossible to carry on a conversation.

The cases cited by Toyota do not help.  In *Wright v. Bath & Body Works Direct, Inc.*, the plaintiff alleged in conclusory fashion that the defendant "engaged in fraud, deception, concealment or unfair practice by selling defective products after it had knowledge of the defects," and, apparently, nothing else.  No. 12-00099-CV-W-DW, 2012 WL 12951921, at *6 (W.D. Mo. July 10, 2012).  In *Cadena v. Am. Honda Motor Co.*, , the plaintiffs argued that the defendant should have disclosed that "[the system] can fail."  Case No. CV 18-4007-MWF (PJWx), 2019 WL 3059931 (C.D. Cal. May 29, 2019).  In *Sims v. Kia Motors Am., Inc.*, the plaintiffs did not allege what advertisements they relied on (or, by extension, what was omitted). No. SACV 13-1791 AG (DFMx), 2014 WL 12558251, at *3-4 (C.D. Cal. Oct. 8, 2014).  None of those cases is comparable to Plaintiffs' far more specific allegations here.

Finally, it is not dispositive that Toyota's owner's manuals contained mentions of an echo when using the Bluetooth system.  Disclosure of the existence of an echo is different from disclosure of the fact that the echo is so pronounced as to make conversations impossible to maintain.

The Court concludes that Plaintiffs have stated with sufficient particularity the content of the alleged omission.[5]

---

[5] The parties also discuss in regard to these claims the availability of owner's manuals to consumers before they purchase or lease their vehicles, as well as the relevance of Plaintiffs' citations to third-party ethical guidelines.  In light of the Court's ruling, it does not need to address those arguments.

       *b. Plaintiffs fail to plead facts demonstrating Toyota's knowledge.*

    Toyota argues that Plaintiffs fail to adequately allege facts showing Toyota's knowledge of the echo defect beyond what Toyota disclosed in the owner's manuals.  Doc. [18] at 11. According to Toyota, Plaintiffs on the one hand argue that Toyota's manuals do not sufficiently describe the echo defect's severity, while on the other hand they argue that the manuals show Toyota's knowledge of the echo defect's severity—which Toyota contends are contradictory claims.  *Id.*

    Next, Toyota argues that a March 2018 "Tech Tip," referred to by Plaintiffs, Doc. [15] ¶¶ 49-53, and published by Toyota on the National Highway Traffic Safety Administration website, simply says that an echo may occur—not that the Bluetooth system is defective or unusable.  Doc. [18] at 11-12.

    Finally, Toyota contends that Plaintiffs' allegation that Toyota should have known about the echo defect because it performs testing is insufficient, because "[a]bsent facts showing that testing actually alerted Toyota to the specific problems Plaintiffs are raising, and that this knowledge was gained before Plaintiffs bought their vehicles, an allegation that testing merely occurred is insufficient to establish knowledge of a classwide defect."  *Id.* at 12 (citing case law).

    Plaintiffs respond that the owner's manuals do not merely say that an echo "could" or "may" occur, or refer to the "possibility of an echo"; rather, the manuals state that the "voice echo *will* increase."  Doc. [23] at 9.  Plaintiffs contend that, semantically, this phrasing implies that Toyota was aware that "the voice echo is inherent in the system."  *Id.*

    Plaintiffs also argue that the Tech Tip states that "[s]ome customers may experience echoing" when using the Bluetooth system, which further demonstrates Toyota's knowledge of the echo defect, citing several out-of-circuit district court cases for the proposition that technical service bulletins can contribute to a finding of scienter.  *Id.* at 9-10.

    And finally, Plaintiffs argue that their allegation is not just that testing occurred; it is that Toyota knew, or reasonably should have known, about the echo defect because it referred to the echo in its owner's manuals: "[Toyota] knew of the defect; it is a plausible inference that it knew its severity."  *Id.* at 11.

    First, Toyota correctly points out that Plaintiffs' argument regarding the owner's manuals is too clever by half.  Because the Court agrees with Plaintiffs that they have plausibly alleged that Toyota's manuals do not go far enough to describe the echo defect, *supra*, Section 2.a., the

Court cannot agree with Plaintiffs that the manuals demonstrate that Toyota had knowledge of the severity of the defect. Plaintiffs cannot have it both ways.

The Court also agrees with Toyota that the Tech Tip does not adequately establish Toyota's knowledge of the echo defect for the purposes of this lawsuit. First, it was not published until after Plaintiff Trout's purchase, so it cannot show what Toyota knew anything at the time of that transaction. *See Elfaridi v. Mercedes-Benz USA, LLC*, No. 4:16-cv-1896-CDP, 2018 WL 4071155, at *6 (E.D. Mo. Aug. 27, 2018) (disregarding a letter post-dating the plaintiffs' purchases as insufficient to show the defendant's knowledge at the time of sale). Second, the Tech Tip's language refers to potential problems *with a user's phone*, not with the overall design of the system. The Tech Tip states in part: "Some customers may experience echoing on the line calling the vehicle when using Bluetooth Hands Free. This is caused by *the phone Hands Free volume being too low*." Doc. [15-5] at 2 (emphasis added). Toyota's recommendation was to "[i]nitiate a phone call and increase the volume on the phone to max volume using the volume up button on the side of the phone, then lower the head unit volume to 45 or lower." *Id.* That phrasing does not establish Toyota's knowledge of an inherently defective Bluetooth system; it establishes that Toyota believed certain phone settings would work better than others with the system. Moreover, if the Court were to find that the Tech Tip— a public-facing document—demonstrates *Toyota's* knowledge of the defect, it would undercut Plaintiffs' argument that the information was withheld from consumers prior to purchasing or leasing a Toyota.

Finally, the Court holds that the complaint's factual allegations related to testing, interpreted in the light most favorable to Plaintiffs, do not give rise to a plausible inference that Toyota knew, or reasonably should have known, that the alleged defect was as pronounced as Plaintiffs claim. Nor do Plaintiffs sufficiently explain how that inference could be drawn based on Toyota's knowledge and disclosure of the echo defect as a general matter. This conclusion is bolstered by Rule 9(b)'s requirement that a plaintiff must allege facts demonstrating a defendant's knowledge with particularity. *See Budach*, 2015 WL 3853298, at *8 (dismissing omission-based MMPA claim because the plaintiff did "not specifically allege . . . *how* [the defendant] became aware of such facts") (emphasis added); *Johnsen v. Honeywell Int'l Inc.*, No. 4:14-cv-594-RLW, 2015 WL 631361, at *3 (E.D. Mo. Feb. 12, 2015) (alleging that a defendant "reasonably should have known" of an alleged defect does not meet the particularity

requirements of Rule 9(b)).  Plaintiffs argue that because Toyota's manuals refer to an echo, testing must have occurred, and because testing must have occurred, that testing must have revealed the severity of the issue.  That inferential leap is unsupported by particularized factual allegations.

Because Plaintiffs have failed to allege with particularity facts supporting a plausible inference that Toyota was aware of the echo defect, and omission-based MMPA claims contain a scienter requirement, Counts II and V will be dismissed.

### 3.  Count IV – Deception-Based MMPA Violation

Toyota seeks to dismiss Count IV (Violation of the MMPA By Means of Deception) on the same grounds as Counts II and V.  *See* Doc. [18] at 8.  Plaintiffs contend that the deception claim should be treated differently, as it does not have a scienter requirement:  "Only the specific MMPA claim of omission of a material fact requires knowledge."  Doc. [23] at 12 (citing 15 CSR § 60-9.020(2) ("knowledge of deception, intent to mislead or deceive, or any other culpable mental state . . . are not elements of deception as used in section 407.020.1, RSMo . . . .")).

Toyota concedes that a properly pleaded deception claim does not have a scienter requirement.  Doc. [24] at 11.  But Toyota argues that Plaintiffs' deception claim is simply a repackaged omission-based claim, premised on the same alleged omissions that underlie Plaintiffs' other MMPA counts, and "to hold otherwise would read the MMPA's scienter requirements out of the statute, as plaintiffs would simply label all nondisclosure claims as instances of 'deception' to avoid pleading that element."  *Id.*

Under Missouri law, for the purposes of the MMPA, "[o]mission of a material fact is any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."  15 CSR § 60-9.110.  "Deception," on the other hand, is "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression."  15 CSR § 60-9.020.  This is not the first court to note the breadth of those definitions.  *See Johnson v. Atkins Nutritionals, Inc.*, Case No. 2:16-cv-04213-MDH, 2018 WL 3398162, at *3 (W.D. Mo. July 12, 2018) ("If these definitions seem broad, that is because they are.").  "The statute and the regulation[s] paint in broad strokes to prevent evasion thereof due to overly meticulous definitions."  *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006).

*Plubell v. Merck & Co.*,, illustrates the breadth of those strokes.  289 S.W.3d 707, 714 (Mo. Ct. App. 2009).  In that case (and in many other cases cited by both parties in their briefings), the plaintiffs did not split their MMPA claims into multiple counts; rather, they brought a single "omnibus" MMPA claim.  The plaintiffs alleged that the defendant pharmaceutical company "engaged in unlawful practices, 'including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts,' by failing to disclose and actively concealing a drug's risks."  289 S.W.3d at 711.  The central issue was whether the defendant had "violated the MMPA by failing to disclose and concealing" a drug's safety risks.  *Id.* at 713.  Citing 15 CSR § 60-9.020's definition of "deception," the court held that the MMPA claim did not require proof of the defendant's knowledge.  *Id.* at 713 n.4.

Based on *Plubell*, it would appear that Missouri courts do allow a deception claim under the MMPA to proceed based on conduct that could also justify an omission claim, provided that conduct meets the broad statutory definition of "deception."  Toyota articulates a legitimate concern—that allowing a "fleeting reference" to deception to suffice to avoid the MMPA's scienter requirement for omission-based claims could lead plaintiffs to label all such claims as instances of "deception," precisely to avoid that requirement.  Doc. [24] at 11.  But the Court is hesitant to endorse a "slippery slope" argument based purely on conjecture, and Toyota does not provide a single instance of a Missouri court noting such "slippage," or even the prospect of it.

Moreover, the Court disagrees with Toyota's characterization of Plaintiffs' pleading as making only a "fleeting reference" to deception.  Plaintiffs specifically plead that Toyota's *advertisement* of their cars' hands-free phone systems, despite the defect, constitutes a deception under the MMPA:  "By promoting its vehicles as containing usable hands-free phone systems even though those systems had the echo defect, Toyota engaged in deception in violation of the MMPA."  Doc. [15] ¶ 166.  And elsewhere in their First Amended Complaint, Plaintiffs explain in detail how Toyota promoted their vehicles with the hands-free feature.  *Id.* ¶¶ 17-19.  Those factual allegations provide more than a "fleeting reference" to deception, understood as "*any* method, act, use, practice, advertisement or solicitation *that has the tendency or capacity to mislead . . . or that tends to create a false impression*."  15 CSR § 60-9.020 (emphasis added).

Toyota cites two cases to support its contention that Plaintiffs have insufficiently pleaded deception, but neither is persuasive.  In *Dean v. Am. Honda Motor Co.*, the court dismissed the plaintiffs' MMPA claim, finding that it could not "reasonably infer from the complaint how [the

12

defendant] 'practiced deception, false pretense, [or] misrepresentation,' as claimed by Plaintiffs, absent any specific factual assertions regarding what deceptions, false pretense or misrepresentations were committed by it."  No. 17-03069-CV-S-DRP, 2018 WL 1249905, *3 (W.D. Mo. Mar. 9, 2018).  The Court reached that conclusion because the plaintiffs alleged only "upon information and belief," that the defendant violated the MMPA "by marketing, selling, manufacturing and/or designing" defective vehicles.  *Id.* at *2.  Plaintiffs here have provided far more specific allegations regarding the nature of the echo defect and Toyota's advertisement of the Bluetooth system than what was alleged in *Dean*.  Doc. [15] ¶¶ 17-19.  Similarly, in *Wright*, the plaintiff provided nothing more than that the conclusory allegation that the defendant "[sold] defective products after it had knowledge of the defects." 2012 WL 12951921, at *6.  Thus, *Wright* is a poor comparator for the same reason as *Dean*.

Toyota does not challenge Count IV on any grounds other than those discussed in the previous section.  Because Plaintiffs' MMPA claim for deception does not have a scienter requirement, it does not suffer from the same pleading defect as their omission claims.  Thus, Toyota's motion to dismiss Count IV will be denied.

### 4.  Count VI – Unjust Enrichment

Lastly, Toyota moves to dismiss Plaintiffs' unjust enrichment count.[6]  Toyota asserts that Plaintiffs' unjust enrichment claims "rely on their contention that Toyota has retained an inequitable benefit by selling vehicles with defective hands-free phone systems and refusing to repair the alleged defect under the terms of its warranty."  Doc. [18] at 15.  Toyota argues that, because the underlying dispute concerns the scope of a warranty (a form of contract), Plaintiffs cannot recover under an equitable theory of unjust enrichment.  Doc. [18] at 15 (citing *Elfaridi*, 2018 WL 4071155, at *11-12, and *Budach*, 2015 WL 3853298, at *8).

Plaintiffs argue that Toyota misconstrues the basis of its unjust enrichment claim, citing the complaint, which alleges, "Toyota's acceptance and retention of these benefits under the circumstances is inequitable *regardless of whether Toyota deems the echo defect to be covered by its Basic Warranty*."  Doc. [23] at 14 (quoting Doc. [15] ¶ 193) (emphasis added).  Plaintiffs suggest that "[t]here is no reason why, in the absence of a warranty, one cannot assert a valid

---

[6] Plaintiffs concede in their opposition brief that Plaintiff Freeman is unable to establish a claim for unjust enrichment because he purchased his vehicle used, and they drop this claim as to him.  Doc. [23] at 13 n.7 (citing Doc. [18] at 15).  Thus, the analysis in this section focuses on Plaintiff Trout and other putative class members.

claim for unjust enrichment based on the sale or lease of a defective product[.]" *Id.* Further, Plaintiffs contend that in this case, where "there is at least a question of whether the claim is subject to the contract," it should be permitted to plead unjust enrichment as an alternative to breach of warranty. *Id.*

Toyota responds that Plaintiffs' unjust enrichment claim is "necessarily premised on conduct governed by the Limited Warranty," because "[i]f Toyota had remedied the purported echo defect without charge, Plaintiff would have no ground to bring an unjust-enrichment claim." Doc. [24] at 12. Moreover, Toyota argues that *Elfaridi* stands for the proposition that an unjust enrichment claim "must be dismissed as subsumed by an express warranty when the plaintiff simply alleges overpayment for a defective product," which it argues is the case here. *Id.* (citing Doc. [15] ¶¶ 190-191).

A claim for unjust enrichment is "founded upon equitable principles whereby the law implies a contract . . . ." *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014). "Under Missouri law, to state a claim for unjust enrichment, a plaintiff must show that: (1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit." *Budach*, 2015 WL 3853298, at *8 (citing *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009)).

An unjust enrichment claim cannot proceed, however, where an express contract governs the relationship between the parties. *Lowe*, 430 S.W.3d at 349; *Obester v. Boutique Hotel Dev. Co. LLC*, Case No. 11-3190-CV-S-RED, 2012 WL 12895061, at *8 (W.D. Mo. Feb. 27, 2012). "Accordingly, a plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover." *Lowe*, 430 S.W.3d at 349 (citing *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). Instead, "the existence of a valid and enforceable contract governing the subject matter at issue ordinarily precludes recovery for events arising out of the same." *Dubinsky v. Mermart LLC*, No. 4:08-cv-1806-CEJ, 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009), *aff'd*, 595 F.3d 812 (8th Cir. 2010) (quoting *In re Express Scripts, Inc., PBM Litig.*, 522 F. Supp. 2d 1132, 1148 (E.D. Mo. 2007)).

The Court agrees with Toyota that Plaintiff's claims are not covered by the warranty. *See supra*, Section 1. There is therefore no risk of recovery for breach of warranty on an equitable

theory.  Further, Plaintiffs specifically plead unjust enrichment regardless of the warranty's existence.  *See* Doc. [15] ¶ 193.  As Toyota itself acknowledges, some courts have permitted pleading unjust enrichment claims in the alternative to warranty claims.  The Court believes this to be the better-reasoned approach.  While Plaintiffs will not be permitted to collect under both contract and quasi-contract theories of recovery, the Court will allow Plaintiffs to proceed on their equitable claim.

The Court denies Toyota's motion to dismiss Count VI.

**Conclusion**

**IT IS HEREBY ORDERED** that Toyota's Motion to Dismiss, Doc. [17], is **DENIED** with respect to Counts IV and VI, and **GRANTED** with respect to Counts I, II, III, and V.

An appropriate order of dismissal shall accompany this Memorandum and Order.

Dated this 30th day of November, 2020.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

15